1
2
3
4
5
6
7
8
9
10
11

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

12   ANGEL PAGAN,                                1:09-CV-00768 LJO GSA HC

13                    Petitioner,               FINDINGS AND RECOMMENDATION
                                                REGARDING PETITION FOR WRIT OF
14          v.                                  HABEAS CORPUS

15
16   JAMES A. HARTLEY,

17                    Respondent.
     _____/
18

19          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

20   pursuant to 28 U.S.C. § 2254.

21                                 PROCEDURAL BACKGROUND

22          Petitioner is currently in the custody of the California Department of Corrections pursuant

23   to a judgment of the Superior Court of California, County of Monterey, following his conviction

24   by plea of guilty to first degree murder in violation of Cal. Penal Code § 187 with a weapon

25   enhancement. See Petition at 3.  On January 5, 1981, Petitioner was sentenced to serve an

26   indeterminate term of twenty-five years to life in state prison with the possibility of parole. Id.

27          On September 10, 2007, a parole suitability hearing was held before the California Board

28

1

1  of Parole Hearings ("Board") to determine Petitioner's eligibility for parole. (HT[1] at 1.) Petitioner

2  attended the hearing and was represented by an attorney. (HT at 1-2.) At the conclusion of the

3  hearing, the Board denied parole and deferred rehearing for three years. (HT at 113.)

4        On May 30, 2008, Petitioner filed a petition for writ of habeas corpus in the Monterey

5  County Superior Court. See Answer, Exhibit A. On July 25, 2008, the petition was denied in a

6  reasoned decision. See Answer, Exhibit B. Petitioner then filed a habeas petition in the California

7  Court of Appeals, Sixth Appellate District. See Answer, Exhibit C. The petition was denied on

8  August 21, 2008. See Answer, Exhibit D. On September 19, 2008, Petitioner filed a petition for

9  review in the California Supreme Court. See Answer, Exhibit E. On March 18, 2009, the petition

10 was denied. See Answer, Exhibit F.

11       On April 22, 2009, Petitioner filed the instant federal petition for writ of habeas corpus.

12 The petition challenges the 2007 decision of the Board of Parole Hearings denying parole.

13 Petitioner contends the Board of Parole Hearings violated his due process rights in denying him

14 parole based on unchangeable factors. He argues the decision bears no nexus to his current risk

15 of danger to public safety. On July 20, 2009, Respondent filed an answer to the petition.

16 Petitioner filed a traverse to Respondent's answer on October 8, 2009.

17                       **FACTUAL BACKGROUND**[2]

18       On September 27, 1980, at 12:04 a.m., the Salinas Police were dispatched to Chinatown

19 to investigate a possible homicide. In a vacant lot at 37 Soledad Street they discovered an

20 unconscious victim, Dominador Sagun, with a single stab wound to his chest. Sagun died within

21 an hour without regaining consciousness.

22       Two male witnesses indicated they observed two Puerto Rican males approach the victim

23 who had been sitting in his car. Both suspects grabbed Sagun and pulled him from the car. Both

24 suspects hit Sagun. Both witnesses could not identify any weapons. The confidential informant

25 immediately told police that Petitioner and Ernest Quinones were suspects. The informant also

26 

27         [1]"HT" refers to the hearing transcript that is attached to Exhibit A to Respondent's Answer.

28         [2]The information is derived from the factual summary as set forth in the parole hearing proceedings. (HT 20-21.)

1   indicated that Petitioner had a knife. The police arrested Petitioner and Quinones one block from

2   the crime scene at 12:30 a.m. Petitioner dropped a lettuce knife with blood on it as the police

3   approached the suspects.

4         At 3:15 p.m., Ernest Quinones made a statement to the police. Quinones indicated that

5   Petitioner had killed the victim with a knife and had taken his wallet and watch. Quinones

6   claimed he was unaware that Petitioner was planning a robbery and denied any involvement in

7   the struggle.

8   **DISCUSSION**

9   I.     Standard of Review

10        On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

11  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

12  enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

13  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

14  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

15  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

16  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

17  provisions.

18        Petitioner is in custody of the California Department of Corrections pursuant to a state

19  court judgment. Even though Petitioner is not challenging the underlying state court conviction,

20  28 U.S.C. § 2254 remains the exclusive vehicle for her habeas petition because she meets the

21  threshold requirement of being in custody pursuant to a state court judgment. Sass v. California

22  Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v. Lambert, 370

23  F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a habeas petition by a

24  state prisoner in custody pursuant to a state court judgment, even when the petition is not

25  challenging [her] underlying state court conviction.'").

26        The instant petition is reviewed under the provisions of the Antiterrorism and Effective

27  Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade,  538 U.S. 63,

28  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

1    adjudication of the claim "resulted in a decision that was contrary to, or involved an

2    unreasonable application of, clearly established Federal law, as determined by the Supreme Court

3    of the United States" or "resulted in a decision that was based on an unreasonable determination

4    of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

5    § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

6         As a threshold matter, this Court must "first decide what constitutes 'clearly established

7    Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,

8    *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this

9    Court must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as

10   of the time of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other

11   words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or

12   principles set forth by the Supreme Court at the time the state court renders its decision." Id.

13        Finally, this Court must consider whether the state court's decision was "contrary to, or

14   involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at

15   72, *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may

16   grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme]

17   Court on a question of law or if the state court decides a case differently than [the] Court has on a

18   set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S.

19   at 72. "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the

20   state court identifies the correct governing legal principle from [the] Court's decisions but

21   unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at

22   413.

23        "[A] federal court may not issue the writ simply because the court concludes in its

24   independent judgment that the relevant state court decision applied clearly established federal

25   law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

26   A federal habeas court making the "unreasonable application" inquiry should ask whether the

27   state court's application of clearly established federal law was "objectively unreasonable." Id. at

28   409.

1    Petitioner has the burden of establishing that the decision of the state court is contrary to

2 or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

3 Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

4 states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

5 state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

6 Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

7    AEDPA requires that we give considerable deference to state court decisions. The state

8 court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1). We are bound by a state's

9 interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*,

10 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

11    In this case, because the California Supreme Court summarily denied the habeas petition,

12 this Court must "look through" that decision to the decisions below. Ylst v. Nunnemaker, 501

13 U.S. 797, 804-05 & n.3 (1991).

14 II.    Review of Petition

15    A parole release determination is not subject to all the due process protections of an

16 adversary proceeding. Pedro v. Oregon Parole Board, 825 F.2d 1396, 1398-99 (9th Cir. 1987); see

17 also Greenholtz, 442 U.S. at 12 (explaining that due process is flexible and calls for procedural

18 protections that particular situations demand). "[S]ince the setting of a minimum term is not part

19 of a criminal prosecution, the full panoply of rights due a defendant in such a proceeding is not

20 constitutionally mandated, even when a protected liberty interest exists." Pedro, 825 F.2d at

21 1399; Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir.1987). At a state parole

22 board proceeding, the only procedural process to which an inmate is entitled is: 1) the inmate

23 must receive advance written notice of a hearing, Pedro, 825 F.2d at 1399; 2) the inmate must be

24 afforded an "opportunity to be heard," Greenholtz, 442 U.S. at 16; and 3) if the inmate is denied

25 parole, the inmate must be told why "he falls short of qualifying for parole." Id.

26    As to these procedural protections, Petitioner was provided with all that is required. He

27 was given advanced written notice of the hearing, an opportunity to submit materials for the

28 Board's consideration, an opportunity to be heard, representation by an attorney, and a written

1    decision explaining the reasons parole was denied.

2        "In <u>Superintendent v. Hill</u>, the Supreme Court held that 'revocation of good time does not

3    comport with 'the minimum requirements of procedural due process,' unless the findings of the

4    prison disciplinary board are supported by *some evidence* in the record.'  472 U.S. 445, 454

5    (1985), *quoting* <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558 (1974)." <u>Sass v. California Board of</u>

6    <u>Prison Terms</u>, 461 F.3d 1123, 1128 (9th Cir.2006) (italics added); <u>Irons v. Carey</u>, 505 F.3d 846,

7    851 (9th Cir.2007), *quoting* <u>Hill</u>, 472 U.S. at 457 ("We have held that 'the Supreme Court ha[s]

8    clearly established that a parole board's decision deprives a prisoner of due process with respect

9    to this interest if the board's decision is not supported by 'some evidence in the record,' or is

10   'otherwise arbitrary.'").  In assessing "whether a state parole board's suitability determination

11   was supported by 'some evidence' in a habeas case, our analysis is framed by the statutes and

12   regulations governing parole suitability determinations in the relevant state." <u>Irons</u>, 505 F.3d at

13   851.  Here, the Court must look to California law and review the record.  In reviewing the record

14   and determining whether the "some evidence" standard is met, the Court need not examine the

15   entire record, independently assess the credibility of witnesses, or re-weigh the evidence.  <u>Sass</u>,

16   461 F.3d at 1128.

17       Further, the California Supreme Court more recently stated:

18       "[T]he relevant inquiry is whether the circumstances of the commitment offense, when
         considered in light of other facts in the record, are such that they continue to be predictive
19       of current dangerousness many years after the commission of the offense. This inquiry is,
         by necessity and by statutory mandate, an individualized one, and cannot be undertaken
20       simply by examining the circumstances of the crime in isolation, without consideration of
         the passage of time or the attendant changes in the inmate's psychological or mental
21       attitude.

22   <u>In re Lawrence</u>, 44 Cal.4th 1181, 1221 (2008).  The nature of the commitment offense "does not

23   in and of itself provide some evidence of current dangerousness to the public unless the record

24   also establishes that something in the prisoner's pre- or post-incarceration history, or his or her

25   current demeanor and mental state, indicates that the implications regarding the prisoner's

26   dangerousness that derive from his or her commission of the commitment offense remain

27   probative to the statutory determination of a continuing threat to public safety." <u>Id</u>. at 1214.

28       In denying parole in this case, the Board based its decision on the following factors: 1)

1  The nature and gravity of the commitment offense; 2) Previous criminal record; 3) Institutional

2  behavior; 4) Lack of programming; and 5) Psychological report. (HT at 106-113.)

3      First, the Board determined that Petitioner committed the offense in an especially

4  heinous, atrocious or cruel manner.[3] The Board found that the offense was carried out in

5  especially cruel manner and that the death of the victim demonstrated an exceptional callous

6  disregard for human suffering. 15 Cal. Code Regs. § 2402(c)(1)(D). The superior court rejected

7  this determination, finding no evidence to support this factor. See Answer, Exhibit B. The Board

8  further determined that the offense was carried out in a dispassionate manner. 15 Cal. Code Regs.

9  § 2402(c)(1)(B). The superior court found there was at least some evidence to support this

10 finding. The court noted that the victim died from a single stab wound to the chest. The court

11 noted that there was evidence that the killing was committed as part of a robbery to secure the

12 victim's wallet and watch. See Answer, Exhibit B. The court also noted that there was evidence

13 that Petitioner had committed a series of robberies using a knife in the past. Id.  In light of the

14 facts of the offense, the superior court's determination that some evidence supported the Board's

15 finding that the offense was especially heinous, atrocious or cruel as to be a sufficient basis to

16 deny parole was not unreasonable.

17     The Board also found Petitioner's prior offenses to be an indicator of unsuitability. 15

18 Cal. Code Regs. § 2402(c)(2). While serving in the United States Army, Petitioner suffered a

19 conviction for assault with a deadly weapon for placing a knife to the neck of a man. See

20 Answer, Exhibit B. The superior court's determination that there was some evidence to support

21 this finding was reasonable.

23    [3] Pursuant to Title 15, of the California Code of Regulations, Section 2402(c) sets forth circumstances
tending to demonstrate unsuitability for parole when the prisoner committed the offense in an especially heinous,
24 atrocious or cruel manner.  The factors to be considered include:
       (A) Multiple victims were attacked, injured or killed in the same or separate incidents.
25     (B) The offense was carried out in a dispassionate and calculated manner, such as an execution-
       style murder.
26     (C) The victim was abused, defiled or mutilated during or after the offense.
       (D) The offense was carried out in a manner which demonstrates an exceptionally callous
27     disregard for human suffering.
       (E) The motive for the crime is inexplicable or very trivial in relation to the offense.

28 15 Cal.Code Regs. § 2402(c)(1)(A)-(E).

1    The Board also determined that Petitioner's extensive and serious misconduct during

2    incarceration indicated he remained a current risk of danger to the community.  15 Cal. Code

3    Regs. § 2402(c)(6). The Board noted that Petitioner had received somewhere between 48 to 51

4    negative counseling chronos ("CDC 128") during his incarceration. Further, he had sustained 19

5    serious rules violations ("CDC 115") during his incarceration. The most recent occurred in 2003,

6    and one that occurred in 2000 was for violent behavior, i.e., assaulting a visitor. (HT at 109.) The

7    Board also found significant a 1993 violation for being under the influence, because this incident

8    occurred well within the time period Petitioner stated he had been drug-free. (HT at 109.) The

9    superior court found Petitioner's institutional record provided some evidence of serious

10   misconduct pursuant to § 2402(c)(6). The court's determination was reasonable.

11   The Board next considered the lack of sufficient self-help programming. While this is not

12   a specific circumstance indicating unsuitability, it can be considered as relevant evidence in

13   determining suitability. 15 Cal. Code Regs. § 2402(b). The Board noted that Petitioner had

14   admitted to a substance abuse problem; however, his self-help programming in this area was

15   limited to the last 21 months of his incarceration. This fact is certainly relevant to determining

16   whether Petitioner would pose a risk to public safety if released, and the state court's finding as

17   to this issue was also reasonable.

18   Finally, the Board considered the psychological report pursuant to 15 Cal. Code Regs.

19   § 2402(c)(5). The report was deemed not supportive of release because it concluded Petitioner

20   still posed a moderate risk of committing violence if released. The state court finding on this

21   issue was also not unreasonable.

22   The Board also considered the positive factors favoring parole release. The Board

23   commended Petitioner for having obtained his GED and two different trades including optical

24   technician and welding. The Board also considered his participation in Alcoholics Anonymous

25   and Narcotics Anonymous. Although participation had been limited up to that point, his

26   attendance was promising for the future. The Board also lauded Petitioner for his educational

27   programming. Nevertheless, the Board concluded Petitioner remained an unreasonable risk of

28   danger to the public in light of his crime, his past criminal behavior, and his misconduct in

8

1  prison. The state court finding that some evidence supported this determination was not

2  unreasonable.

3      Petitioner also argues that the Board's continuing reliance on the unchanging

4  circumstances of the underlying offense violates his due process rights. In Biggs v. Terhune, 334

5  F.3d 910, 916-17 (9th Cir.2003), the Ninth Circuit stated that "[a] continued reliance in the future

6  on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs

7  contrary to the rehabilitative goals espoused by the prison system and could result in a due

8  process violation." As discussed above, however, the circumstances of the offense, while

9  significant, were not the only reasons for the Board's decision. The Board found Petitioner's

10  prior criminal history, his serious disciplinary problems, his lack of programming, and his

11  psychological issues to be of great importance in concluding he would pose an unreasonable

12  danger to public safety should he be presently released.

13      In light of the above, it cannot be said that the state court resolution of Petitioner's claims

14  "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly

15  established Federal law, as determined by the Supreme Court of the United States" or "resulted

16  in a decision that was based on an unreasonable determination of the facts in light of the evidence

17  presented in the State Court proceeding." 28 U.S.C. § 2254(d).

18                    **RECOMMENDATION**

19      Based on the foregoing, it is HEREBY RECOMMENDED that:

20      1.      The petition for writ of habeas corpus be DENIED; and

21      2.      Judgment be entered in favor of Respondent.

22      This Findings and Recommendations is submitted to the assigned United States District

23  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of

24  the Local Rules of Practice for the United States District Court, Eastern District of California.

25  Within thirty (30) days after being served with a copy, any party may file written objections with

26  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

27  Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served

28  and filed within ten (10) court days (plus three days if served by mail) after service of the

objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


     IT IS SO ORDERED.

 **Dated:**    **October 21, 2009**                    _____ **/s/ Gary S. Austin** _____
                                                        UNITED STATES MAGISTRATE JUDGE